UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18-CR-13 |
| | ) | |
| JAIRE TYLER HUSSEY | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court to address the defendant's objections to the presentence investigation report ("PSR"). The defendant objects to paragraphs 9, 10, 11, 17, and 18 of the PSR. Specifically, the defendant objects to the inclusion of the incidents included in paragraphs 9, 10, and 11. Further, the defendant objects to the PSR's use of these incidents as relevant conduct to the offense of conviction pursuant to United States Sentencing Guidelines Manual ("USSG") § 1B1.3, resulting in the overall addition of six levels to the defendant's advisory guideline range. The defendant argues that even if these separate instances outlined in paragraphs 9, 10, and 11 occurred, they would not qualify as the same course of conduct or a common scheme or plan as defined by the USSG, and therefore, the two-level enhancement for the offense involving three to seven firearms pursuant to USSG § 2K2.1(b)(1)(A) in paragraph 17, as well as the four-level enhancement for possession of a firearm or ammunition in connection with another felony offense pursuant to USSG § 2K2.1(b)(6)(B) in paragraph 18, are improperly applied. For the reasons that follow, the objections will be **OVERRULLED**.

**A. Background**

A federal grand jury indicted the defendant in a two count indictment on January 9, 2018. The defendant was charged in the indictment in two separate counts of being a felon in possession of a firearm. On March 9, 2018, the parties filed a plea agreement in this case, which outlined that

1

the defendant had agreed to plead guilty to Count One of the indictment. This Court held a hearing on the matter and ultimately adjudged the defendant guilty as to Count One. The facts of the offense of conviction show that on November 21, 2017, the defendant was operating a 2007 Lincoln MKZ which was pulled over by law enforcement for a window tint violation. After the defendant stepped out of the vehicle at the officer's request, the defendant advised the officer that he had some marijuana in the vehicle. The officer retrieved the marijuana from the vehicle and had the remaining two passengers exit the vehicle. While conducting a search of the vehicle, the officer discovered a Sig Sauer model P226, .40 caliber semi-automatic pistol beneath the seat where the defendant had been sitting.

The United States Probation Office prepared the PSR and disclosed it to the parties on May 23, 2018. The defendant timely objected to paragraphs 9, 10, 11, 17, and 18 of the PSR, [Doc. 19]. This Court entertained oral arguments from each party as to these objections at an initial sentencing hearing, and held sentencing in abeyance until the objections were decided.

### B. Factual Objections

Although not unambiguously raised in his written objections, the defendant objects to the underlying factual instances contained in paragraphs 9, 10, and 11 of the PSR. Where contested, "the government bears the burden to establish enhancement factors" at sentencing. *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir. 1989). "The preponderance of the evidence standard applies to contested facts in sentencing proceedings." *Id*.

The government has filed a supplement in the record, [Doc. 28], which includes various sworn affidavits by law enforcement officers outlining prior conduct of the defendant.

The first affidavit, [Doc. 28 at PageID # 119], describes the events outlined in paragraph 10 of the PSR. In the affidavit, the officer declares, under oath, that on December 9, 2017, officers

arrived on scene to a vehicle accident. A witness, Cody Cox, was stumbling around outside the vehicle with blood coming from his head, stating he had lost consciousness. Mr. Cox was the front seat passenger of the vehicle, and knew the driver as "Taliban." Officers observed in plain view an AR15 style rifle in the back seat along with a green leafy substance appearing to be marijuana in the driver's floorboard. Another witness, David Reed, identified the driver as "YD," and stated that the rifle belonged to the driver. Mr. Reed advised officers that the defendant had asked him if it was okay for him to put the rifle in the back seat since it was in the front of the vehicle. A search of the vehicle revealed a wallet in the driver's seat floorboard which contained the defendant's Tennessee Driver License. A backpack was also found in the vehicle next to the rifle which contained court documents and other personal belongings of the defendant identifying him as the owner of the bag. The backpack also contained a box of 24 .380 caliber rounds and a box of CCI .22LR rounds. The box contained 30 rounds, and the 13 rounds found loaded in the rifle matched the manufacturer and type found in the backpack. Two scales and several handwritten letters addressed to "YD" were also in the bag. Officers located a suspiciously wrapped baggie of candy in the driver's door pocket which was consistent with illegal narcotics. The defendant's tracks were found in the snow; however, the defendant could not be located.

The second affidavit, [Doc. 28 at PageID # 121], describes the events of the offense of conviction. These events are not at issue in the defendant's current objections.

The third affidavit, [Doc. 28 at PageID # 123], describes the events outlined in paragraph 11 of the PSR. In the affidavit, the officer declares, under oath, that on December 30, 2017, the officer responded to a shots fired call at 704 Frances Street in Johnson City, Tennessee. Upon arrival, the complainant stated that the defendant fired a weapon at her because they were in an argument about the power bill. The complainant further stated that a roommate came outside, and

that the defendant racked a handgun and pointed it at the roommate and told him to back up. The roommate stated to the officer that the defendant pointed the firearm at him as well as the other victims and told them all to back up and to stop talking. The defendant got back into a vehicle, leaned over to the passenger side of the vehicle, and shot the firearm into the air. He then fled the scene in the vehicle. All of the victims advised they were afraid for their lives when the defendant pointed the weapon at them.

The fourth, fifth, sixth, and seventh affidavits, [Doc. 28 at PageID # 125-32], describe the events outlined in paragraph 9 of the PSR. In these affidavits, the officer declares, under oath, that on May 9, 2017, the officer conducted a traffic stop on a 2002 Toyota Sequoia and determined that it had been reported stolen in Chattanooga. The defendant was the front seat passenger in the stolen vehicle. During a search of the vehicle, the officer found approximately 16 grams of cocaine and one ounce of marijuana along with scales and baggies. The officer also found a loaded .380 caliber Lorcen semi-automatic pistol under the front passenger seat where the defendant was sitting.

The defendant has not presented any countervailing evidence to show these affidavits are unreliable or factually inaccurate. "The credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004). There is nothing in the record to suggest that these sworn affidavits are incredible or unreliable. The Court finds that, under the preponderance of the evidence standard, the government has met its burden as to the contested facts contained in paragraphs 9, 10, and 11 of the PSR. Therefore, the defendant's objections to these facts are **OVERRULED**.

    C. Relevant Conduct Determination

Having determined that these events occurred for sentencing purposes, the Court now must determine their applicability to the offense of conviction. "The government bears the burden of proving, by a preponderance of the evidence, that another offense constitute[s] relevant conduct." *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018) (citing *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008)). The two-level enhancement for the offense of conviction involving three to seven firearms pursuant to USSG § 2K2.1(a)(4)(A), as well as the four-level enhancement for use of a firearm or ammunition in connection with another felony offense pursuant to USSG § 2K2.1(b)(6)(B), only apply as "relevant conduct" if the incidents outlined above are "part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). "To qualify as part of a 'common scheme or plan' under the 'relevant conduct' guideline, the offenses 'must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*.'" *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996).

Even if the offenses do not qualify as part of a "common scheme or plan" as described above, they may nevertheless be considered the "same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." USSG § 1B1.3, application note 5(B). There are three "factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct," including: (1) the degree of similarity of the offenses, (2) the regularity of the offenses, and (3) the time interval between the offenses. *Id*. "The Guidelines counsel a 'sliding scale approach' to these factors." *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008). In essence, the advisory guidelines explain that "[w]hen one of the above factors is absent, a stronger presence of at least one of the

other factors is required." USSG § 1B1.3, application note 5(B); *see also Phillips*, 516 F.3d at 483. The Court will discuss each factor in turn.

1. **Similarity**

The defendant argues that similarity among these offenses is weak. In his written objections, the defendant asserts that the May 9, 2017 incident is the most similar to the offense of conviction because it involves possession of a weapon in a vehicle. The defendant points out, however, that there, unlike the offense of conviction, the defendant was not the driver, it involved a different gun, it involved different passengers, and that there are no facts establishing that the defendant was the owner of the gun. Furthermore, the defendant argues that all of the other incidents have considerable differences from the offense of conviction, including different victims and different witnesses. The defendant cites to the recent Sixth Circuit opinion in *United States v. Amerson*, to support his position.

When considering the similarity factor for multiple illegal possession incidents, the court should look "beyond the general nature of the offense," to the "characteristics about the possessions that show similarity beyond the act of unlawfully possessing a gun." *See Amerson*, 886 F.3d at 578 (citing *Phillips*, 516 F.3d at 485)).

Taking the established facts, the Court finds that each of the incidents—May 9, 2017, December 9, 2017, and December 30, 2017—have similarity to the offense of conviction.

**May 9, 2017 Incident**

Here, the facts show that a traffic stop was conducted on a vehicle and the defendant was a passenger. A search of the vehicle revealed illegal substances—16 grams of cocaine and two baggies containing approximately one ounce of marijuana, scales, and baggies—as well as a loaded .380 caliber pistol. The pistol was found underneath the defendant's seat.

The Court finds that the degree of similarity between these two instances is strong. First, the relevant conduct—illegally possessing a firearm as a felon—is identical to the offense of conviction. Indeed, the defendant has admitted that he was a convicted felon and was prohibited from possessing a firearm. Further, both of the incidents involve pistols located in a vehicle along with illegal substances, specifically, marijuana. The only substantive difference this Court finds regarding this incident is that the defendant was a passenger during the May 9, 2017 incident, while he was the driver of the vehicle during the offense of conviction. Also, there are different victims and witnesses. However, in both instances, the handgun was found underneath the defendant's seat within the vehicle, and illegal substances, specifically marijuana, were present.

**December 9, 2017 Incident**

Here, the facts show that officers responded to a vehicle accident. The two witnesses, both passengers of the vehicle, stated that the defendant was the driver of the vehicle and had fled from the scene. In the back of the vehicle, the officers found a loaded AR15-style rifle which belonged to the defendant. The rifle was originally in the front of the vehicle, but the defendant moved it to the back seat. The defendant's backpack was also found in the vehicle, which contained a box of 24 .380 caliber rounds and a box of CCI .22LR rounds, and two scales. The .22LR box contained 30 rounds, and the 13 rounds found loaded in the rifle matched the manufacturer and type found in the defendant's backpack. Also, the officers found a suspiciously wrapped baggie in the driver's door pocket which was consistent with illegal narcotics.

The Court finds that the degree of similarity between these two instances is also strong.[1] Again, in both of these instances, the relevant conduct involves the defendant illegally possessing a firearm as a felon. Further, although the facts are distinguished for this instance because the

---

[1] In the Court's view, the similarity between these two incidents is not as strong as the similarity between the May 9, 2017 incident with the offense of conviction.

defendant possessed a rifle rather than a handgun, like the offense of conviction, the firearm was found in a vehicle in which the defendant was the driver. Further, the rifle/handgun distinction is relatively diluted because here, the defendant possessed ammunition for both types of firearms in his backpack—rifle ammunition and handgun ammunition. As an additional factor which points to congruency of the defendant's overall common conduct, the .380 handgun ammunition found in this incident was the same caliber ammunition as required by the .380 firearm found in the May 9, 2017 incident. Further, this incident and the offense of conviction both involved firearms located in a vehicle along with illegal substances, specifically marijuana.[2] Further, there were other passengers in the vehicle along with the defendant. The distinguishing facts here are that the rifle was not found underneath the defendant's seat, and the firearm was a rifle rather than a pistol. Also, of course, there are different witnesses and victims. However, the Court finds strong similarity nevertheless, given that the defendant illegally possessed a firearm in a vehicle and there were illegal substances in the vehicle, specifically, marijuana.

**December 30, 2017 Incident**

Here, the facts show that the defendant was involved in an argument with a victim over the electric bill. The defendant pointed a handgun at the victims, told them to back up, and told them to stop talking. The defendant got into a vehicle, leaned over the passenger side of the vehicle, shot the firearm into the air, and then fled the scene in the vehicle.

The Court finds that there is some similarity between the December 30, 2017 incident and the offense of conviction, although it is not as strong as either the May 9, 2017 incident or the December 9, 2017 incident. Supporting similarity, in this incident, the relevant conduct is, again,

---

[2] The Court notes that the facts only indicate that a green leafy substance resembling marijuana was found in the driver's side floorboard of the vehicle. Additionally, the affidavit submitted by the government states that, as a result of the officer's findings, the defendant was charged here with simple possession of a schedule IV marijuana, among other charges.

possession of a firearm by a convicted felon. However, although this incident involved a vehicle, in the Court's view, it is somewhat dissimilar to the offense of conviction for a number of reasons. First, unlike the offense of conviction, this incident did not involve any illegal narcotics. Further, although the defendant was the driver of the vehicle in both cases, this incident did not involve any passengers and it is of a different circumstantial nature than the offense of conviction—driving a vehicle with a firearm and illegal substances versus using a vehicle to speed away from an altercation. Nevertheless, similar to the offense of conviction, the defendant possessed a handgun. Overall, the Court finds that this factor is neither strong nor weak for determining if this incident is relevant conduct to the offense of conviction.

In sum, the Court finds that the May 9, 2017 and December 9, 2017 incidents are strongly similar to the offense of conviction, while the December 30, 2017 incident is neither strongly similar nor weakly similar to the offense of conviction.

2. **Regularity**

In his written objections, the defendant argues that there is little regularity present, and therefore this factor should weigh against an application of relevant conduct. However, at the initial sentencing hearing, the defendant conceded that there is likely strong evidence of regularity among these incidents with the offense of conviction.

Here, the Court finds that there is significant regularity present. Here, there are two other incidents which are strongly similar to the offense of conviction, and although not strongly similar, the third incident still involved the defendant's possession of a firearm. Having all four of these instances within a roughly 8-month timeframe shows a pattern of the defendant in consistently carrying firearms. In *United States v. Phillips*, the Sixth Circuit found that two incidents in addition to the offense of conviction was sufficient to support a finding that regularity was a

stronger factor in favor of relevant conduct. *See United States v. Phillips*, 516 F.3d 479, 484 (6th Cir. 2008). Here, there are two incidents that are strongly similar to the offense of conviction, and there is an additional incident which has at least some similarity.

The Court finds that the regularity factor is strongly in favor of a finding of relevant conduct.

### 3. Timing

The defendant finally argues that the timing of the incidents relative to the offense of conviction is too attenuated to support a finding of relevant conduct. Although the defendant's written objections concede that "the timing element may cut against Mr. Hussey," in his oral argument, the defendant flipped script and asserted that timing was a factor in Mr. Hussey's favor. In doing so, the defendant particularly referenced the recent Sixth Circuit opinion in *United States v. Amerson*, 886 F.3d 568 (6th Cir. 2018).

In *Amerson*, the Sixth Circuit considered the district court's relevant-conduct determination for a defendant who was convicted of being a felon in possession of a firearm. *See id.* at 570. There, police officers discovered a rifle and a pistol in the defendant's home, and the defendant was charged and convicted for possessing these firearms as a felon. *Id*. Roughly three and a half months earlier, the defendant was involved in an argument with a group of individuals at a gas station, wherein the defendant was the occupant of a vehicle and fired shots at the other group with a .40 caliber handgun. *Id*. at 571. The district court determined that the earlier altercation was relevant conduct to the offense of conviction, and applied a two-level increase in the offense level for number of firearms pursuant to USSG § 2K2.1(b)(1)(A), and a four-level enhancement for possession of a firearm in connection with another felony offense pursuant to USSG § 2K(b)(6)(B). *Id*. at 572. The appellate court held that "because the government proved

only a single additional non-contemporaneous instance of illegal firearm possession and only minimal similarity between the two possessions, this was insufficient to support a course-of-conduct finding." *Amerson*, 886 F.3d at 578. In reaching its conclusion, the appellate court determined that the government proved only the bare minimum regarding the regularity factor, showing only one other offense, the prior illegal firearm possession three and a half months earlier. *Id*. at 574. As a result, the court stated that "[a]ny case involving a relevant-conduct determination involves at least one other instance of conduct," so therefore, "in cases like this, regularity is 'completely absent,'" and "the government needed to prove stronger evidence of similarity or temporal proximity." *Id*. Additionally, the court determined that "[the defendant's] willingness to engage in the same type of criminal activity in a three-and-a-half month period cuts *in favor* of a course-of-conduct finding." *Id*. (emphasis added) (referencing the nine-month period identified in prior cases as sufficient for upholding a course-of-conduct determination involving several illegal firearm possessions). The court went on to say that because the government had failed to show any regularity, "*stronger* timing evidence was necessary." *Id*.

The present case is distinguished from *Amerson* because here the government has provided three other instances of conduct, rather than only one. Indeed, as this Court has found above, and as the defendant conceded in his oral argument, the government here has provided *strong* evidence of regularity for the course of conduct determination. Unlike *Amerson*, it is not required that the government here show *strong* timing evidence because there is no complete lack of regularity. Even if *Amerson* stands for the proposition that without any showing of regularity, multiple instances of illegal possession of firearms requires a showing of contemporaneous or near-contemporaneous possessions, such a showing need not be made here because regularity is present.

Further, other binding precedent out of this Circuit counsels that when substantial similarity and regularity are present, a significant lapse of time between the offenses will not overcome the other two factors. *See Phillips*, 516 F.3d at 485 (concluding that "[a]lthough there is significant time lapse between offenses, because there is substantial similarity between the offending incidents and because [the defendant] has indicated that he carried firearms regularly," the district court did not err in finding the same course of conduct).

The furthest incident—the May 9, 2017 incident—occurred roughly six and a half months before the offense of conviction. The other incidents occurred within roughly one month of the offense of conviction. This Circuit has previously stated that, generally, a nine-month period between other conduct and the offense of conviction may be upheld as supporting a finding of relevant conduct. *See id*. at 483. Here, all of the incidents are well within the nine-month period, and two of the incidents are drastically close in time to the offense of conviction.

The Court finds that the timing factor also strongly favors a same course of conduct finding.

**D. Conclusion**

Having found that all of the factors outlined in the advisory guidelines as well as the case law of this Circuit support a finding that the incidents outlined in paragraphs 9, 10, and 11 of the PSR are relevant conduct to the offense of conviction, the defendant's objections to the use of these offenses as relevant conduct are **OVERRULED**. Therefore, the two-level enhancement for the offense involving three to seven firearms pursuant to USSG § 2K2.1(b)(1)(A) in paragraph 17 of the PSR, as well as the four-level enhancement for possession of a firearm or ammunition in connection with another felony offense pursuant to USSG § 2K2.1(b)(6)(B) in paragraph 18 of the PSR, are properly applied.

ENTER:

                                                s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE